Good morning, ladies and gentlemen. This is the time set for re-hearing on Bank in the case of Munoz Santos v. Thomas. We'll hear from the petitioner. Good morning, Your Honors. Matt Larson for Mr. Munoz, and I'd like to reserve five minutes for rebuttal. Your Honors, the Supreme Court explained a century ago that the job of an extradition judge is to decide if there is competent evidence to support the extradition. Evidence gotten by torture is, of course, not competent. So where, as here- Is it per se incompetent? It is, Your Honor. What's your authority for that? The U.S. Constitution, the treaty at issue in this case, all of the cases cited in our brief saying that evidence gotten by torture is uniquely offensive to the individual, uniquely offensive to the administration of justice, and uniquely likely to produce unreliable information. No court in the United States admits evidence gotten by torture, and of course, under the treaty here, the question is whether the evidence is admissible under United States law to support the extradition. Counsel, let's just take it as a given that evidence that you know was obtained under torture is not admissible. I don't think anybody's going to argue to the contrary. The problem we have here, though, is to determine in this setting, in this limited setting, how you take evidence. You can't have it both ways. You've got these two people who have said one thing at one point, an entirely different thing at another point. They are irreconcilable. Normally, it would be handled in an evidentiary proceeding. They would be there. People would have a process. You would be able to determine it. In this case, we can't do that. Are you making of an allegation of torture is per se evidence that evidence is not competent? No, Your Honor. There has to be some kind of evidentiary proffer, and in here, there's substantial evidence of torture. I'd like to highlight for the court a point that did not come through in the briefs because the briefs are arguing about whether there was legal error here in ignoring the evidence of torture, but the petition did not flush out and enumerate all of the items of torture evidence in this case, and they are substantial. In addition to the statements of Mr. Rosas and Mr. Hurtado, who several times said in court that Hurtado's account was corroborated in part by the clerk, there's additional evidence in this case, Your Honor. Forgive me, counsel, but what you're talking about, though, is an evaluation of the evidence as opposed to an obliteration of the evidence, which is what our case law seems to require. How do you square those things? If we're using the terminology obliteration, if we have evidence that an accusation supporting extradition was gotten by torture, that evidence of torture obliterates any showing of probable cause. So from your perspective, anyone who is the subject of an extradition proceeding in the United States, all they have to do is to get someone who originally inculpated them to say that they were tortured, and that's the end of the extradition proceeding? Certainly not, Your Honor. That's not at all our position. What's your position? Our position is this. Where there's evidence of torture that's proffered, the court has to inquire further. The court does not have to believe the torture evidence at its base, but the court does have to inquire. Now here... Now here, they did. Didn't the district judge evaluate the evidence and conclude that it was irreconcilable and therefore went forward on the basis that nothing further could be done under the circumstances? No, Your Honor. No evaluation of the torture evidence was made in this case at all. The extradition judge decided and the district judge agreed that that evidence was categorically excludable and should not be considered and should not be factored into the probable cause determination. Therefore, the finding of probable cause that was made rests solely on the accusations. The judge never considered all of the evidence that those accusations were beaten and waterboarded, suffocated out of Mr. Rosas and Mr. Hurtado. That determination was never made, and that's all we're asking for in this case. All we're asking for is for a neutral decision maker to look at the evidence and make a decision as to whether it's sufficiently persuasive, sufficiently conniving. How does it work? Do you bring the witnesses from Mexico and you interrogate them? I mean, these people recanted shortly after they made their original statements. They apparently weren't afraid anymore. So how do you evaluate that? The evaluation is going to be committed to the discretion of the magistrate. And now, this can take any number of forms. The case law cited in Quinn is clear that the magistrate has broad discretion in deciding how to evaluate evidence. Now, this may take many forms. It could be, on a remand, the judge will consider the evidence that was proffered in the record. And again, there is substantial evidence, which I can list for the court, if the court is interested. It's not just Mr. Rosas and Hurtado saying... I'm interested in that evidence, and I'm also interested in whether or not it was excluded as well. All of the evidence, Your Honor, was excluded. The judge made the probable cause determination without weighing any single piece of evidence of torture in this case. And the evidence is substantial. It's not just Mr. Rosas and Hurtado's accounts. It's the court clerk corroborating Mr. Hurtado's account in terms of the bruises on his face. It's relatives of Mr. Hurtado's seeing the bruises on his face in person when they visited him in prison. Mr. Munoz also proffered testimony of being tortured. Mr. Munoz had two medical exams by doctors who indicated that he had physical injuries consistent with the torture that he alleged. Now, the judge read them, though, right, before excluding them, correct?  But the judge excluded it from his consideration. He says that explicitly. He says, I'm not considering this because I think it's not something that I can consider. But did the judge read it to make the decision of exclusion? I don't know that he read it in detail. For all I know, he listened to the proffer that the defense made as to what the various witnesses would attest to, but I don't know that he read every line. He certainly said, whatever it says, I can't consider it. That's the error that we're alleging here, this categorical refusal to consider evidence that this extradition rests on evidence gotten by torture. In your position, then, is it your position that any time anyone alleges torture that the judge needs to at least consider that evidence? Let's say someone is brought to court 10 years after the alleged crime in a foreign country. For the first time, his lawyer says, oh, you can't extradite him. He was tortured. The judge can say, okay, what do you got? Where's the evidence? I got nothing. Okay, next issue, moving on. That's not the case here. No, but if the individual offers an affidavit or some other evidence, then is it your position it must be considered in some fashion, but could be rejected? Reasoned consideration. Reasoned consideration, Your Honor. It doesn't have to be believed at face value. That's not our position at all. All we're asking for is a reasoned consideration by an impartial decision maker as to whether this evidence is credible. In this case, you would have these affidavits plus the observations of other people, and that would be stacked up against, then, the agent of the public prosecutor and the medical records submitted by Mexico, and the decision maker would just make a decision. Indeed. You don't need a trial or a hearing. Not at all. Now, that's certainly an option. There's no law saying that the magistrate can't have life witnesses, but that's not a requirement, and we're not at all saying that that's a requirement. This is a decision that can be made on the papers. It's a decision that's made every day by magistrates across the country in terms of determining probable cause, and it's also a decision that's made every day by immigration judges when they consider cat claims. Well, let me ask you this, just so that we can sort of cabin it. I believe you've conceded that the allegations of torture are inextricably intertwined with the recantations. Is that true? No, Your Honor. We did not concede that as a matter of law. You have not conceded that? What we said was this, if I can just clarify the record. The terminology, and just so the Court is clear, the terminology inextricably intertwined is not a term of art of extradition law. This is something that the district judge proposed. She sent a list of questions to counsel. Well, I know it isn't, but I thought you conceded that. No. What happened was this. At the hearing, she said, are they- Did you concede? We conceded that they were intertwined insofar as the statements were made at the same time. When Rosas and Hurtado were brought to court for the first time, they said, they described their torture, they described the waterboarding, the suffocation, the death threats to their children, and then when they were asked, do you recant your accusation, they said, I recant. Temporally, they were made at the same time. Is this hybrid evidence or not? I'm sorry? Is it hybrid evidence or not? No. They are discrete questions, Your Honor. The question whether Mr. Rosas and Mr. Hurtado were tortured is analytically and factually discrete from whether they had plotted a kidnapping with Mr. Munoz. In fact, counsel, if the question of recantation is actually irrelevant to any of this, isn't it? In other words, it is possible that both of their affidavits are true. That is, that they did the things that they are accused of, but that the confession of that was extracted illegally and through coercive interrogation and therefore would be excluded. So those two things are not inconsistent. So we can ignore any of the recantation evidence as evidence that it was not truthful. The only question that remains then is whether they were tortured or not. You've hit the nail on the head, Your Honor. We're not asking for consideration of the recantation statements. We're not asking for a determination whether, in fact, they plotted the kidnapping. All we're asking for is consideration of the substantial evidence in this case that these two people were tortured into making their allegations against Mr. Munoz, if they likely were. In fact, on the recantation, I think you acknowledge that it's possible, just at the recantation, what the magistrate judge decided and the district court decided might not be unreasonable, in that they don't have to bring in additional witnesses that could be considered conflicting evidence, separating out the statements and allegations of torture. If Your Honor is just asking about the recantations basically saying, I know I said I did it, but really I didn't do it, we're not asking for consideration of that, because we recognize that that goes to the question of ultimate guilt. That's something for ultimately the trial court. And could be considered contradictory. Indeed. But we don't get there yet. Exactly. The preliminary inquiry, yes. You're saying you need to peel off those statements, even though they were in the same document. They were temporarily made at the same time. And those documents are essentially criminal minutes written by the clerk. It's not a transcript. They basically came into court. So then my question, I guess, then, is what limits could the extradition court impose that would respect the interest of the Mexican government while giving the court a sufficient factual basis to make a determination of whether torture occurred? I think the limit is that I think the approach should be that each side should have a fair opportunity to proffer evidence of torture. And then the magistrate will weigh it. And magistrates are able and well accustomed to making these kinds of determinations. What should we make of the fact that the Rosas and Hurtado's allegations of torture, I mean, looking through the record here, it looks like these allegations of torture were made before a Mexican judge, you know, nearly 10 years ago. And yet there's no evidence, at least from what I could see, that the Mexican judge has credited those statements. Does it even exist, that evidence? Do you know whether Rosas and Hurtado ever were convicted of the kidnapping? The evidence of, are you saying whether the evidence of torture was credited by a judge? Correct. We don't know. We know that they made these statements before judges. We know that they made their initial allegations before prosecutors. So are they pending, are they still in jail pending a determination or their trial? The ultimate disposition of their cases is not in the record. What is in the record is that one of their co-defendants, Rosa Lopez Mendeville, who was also implicated by Rosas and Hurtado in their initial statements, she has been exonerated by a Mexican court. The Mexican court has voided her saying there was no evidence to support it. So we don't know, ultimately, the final disposition of these cases, but we do know that in this case, what the judge did was opt to ignore all of the evidence that these two people, on whom extradition depends, were tortured into making their allegations. Well, I'm puzzled by that statement. I'm looking at the district court's decision from pages 20 through 24, and it looks like the judge considered each of the allegations that were made by Munoz. What am I missing here? She went through in great detail, indicated what they claimed and so on and so on, and then ultimately concluded that because you couldn't verify one way or another, and they were directly contradictory of what had previously been said, that there was nothing that the court could do. But the court considered the evidence, though. There was a lot of evidence below, and there were a lot of arguments below Our argument was not simply about torture. We had also advanced an alibi theory. And the court considered that. The district court considered it. Indeed, but all of that has been peeled away. Our argument, because the only issue we raised on appeal, Your Honor, was the legal error of ignoring the torture evidence. But they didn't ignore that. What I'm saying is the district judge reviewed what the magistrate judge did, and the district judge did consider the torture evidence, and the district judge did consider the alibi evidence and concluded that it was so contradictory of the original statement that there was no basis in this type of proceeding for further considering it because you had no process, et cetera. I respectfully disagree with Your Honor. What the magistrate did was to say I'm talking about the district judge here. Yes, the district judge said the magistrate did not err in ignoring the evidence of torture because I find that they are inextricably intertwined, the torture and the recantation. But you say ignored it. It wasn't ignored. The fact is there was no ability to make a final determination other than that they were contradictory and therefore you couldn't go forward in this type of proceeding. They considered it. They just didn't agree that that per se was enough to eliminate evidence of probable cause. They acknowledged that there was evidence of torture in the record, but they refused to consider it a probable cause determination. They did not assess the torture evidence. They did not make a finding as to whether it was likely that Mr. Rosas and Hurtado were in fact these kinds of determinations were made in the Barapin case, the Magnero case, in every other case in the circuit in which someone says if you can't extradite me because these people were tortured, the courts have always considered the torture evidence and they either find it compelling as they did in Cornejo and Barapin as to one charge, or they find it not compelling as to some other charges in Barapin. Was it the language that the court used that they didn't find it compelling or was it the fact that it wasn't considered? It wasn't considered, Your Honor. There was no analysis. Forgive me, counsel. I don't know what you look at when you look at pages 20 through 24, but it seems to me that every allegation that was made was recited. They talked about the torture. What more can be asked than getting the people on the stand and conducting a mini trial? Your Honor, on page 20 of the record, the district court says that the court concludes the extradition court properly excluded the evidence of torture. Well, that was the ultimate conclusion, but there was also a discussion of what that evidence was. There was a discussion of the other evidence about the lawyer Beresheet, about the alibi allegations, but none of that is at issue in this case. The judge there, neither judge below, considered the evidence of Rosas and Hurtado's torture. They didn't consider the other evidence of torture that was proffered in the record, and that's all we're asking for. At the end of the day, the district court agreed that the magistrate shouldn't consider the evidence of torture because it was inextricably intertwined. We've briefed why that's incorrect as a matter of fact and law. Can I add to that? I'd like to get your position clearly on this question. The basic rule that we have is if there's conflicting evidence that would require determination by a jury or by a bench trial judge, that's not resolved, and we just send that to the, we extradite, and that's decided by the court of the country to which we extradite. What if we have conflicting evidence with respect to whether or not there was torture? Now, as I read Berepend, not in the section discussing recantation, but in the section discussing torture specifically, what we held in Berepend was that the court below properly evaluated the evidence with respect to whether there was torture, decided there was not torture, and therefore consulted the evidence. Now, is your position then that if there is evidence of torture on both sides, that is to say, evidence presented that there was torture and evidence presented that there was not torture, that the magistrate judge must decide that as a question of the admissibility of the evidence and that that goes to the magistrate rather than to the jury. Is that your position? Absolutely, Your Honor. Okay. Before the magistrate judge, you argued that Munoz was able to invalidate the first warrant of his arrest in Mexico. It seems like in part because the evidence that there was evidence that he was tortured into confessing. At least that's what I, where is that? No, Your Honor.  The second warrant alleged one count and the second count was dropped by the Mexican authorities essentially for lack of evidence. That had nothing to do with the torture stuff. Thank you. And then I guess the other question I had is, do we even need these confessions of Mr. Rosas and Mr. Hurtado? It seems like we have the third individual. I think his name is Mr. Hernandez, who the government submitted that Mr. Rosas and Mr. Munoz approached him about doing the job. Mr. Andrade. I'm sorry, I thought it was Mr. Andrade. I mean, we have him identifying Mr. Rosas as a person who came up to him and asked him about doing the job and that they would get the money from the victim's father here or the victim's husband and father. You also have the victim, the mother of the daughters who identified Mr. Rosas. At least that's what's in the, and I'm just wondering, do we do, isn't that sufficient probable cause? No, Your Honor. The district judge had the very same question and she rejected it and for good reason. I'll walk through why she rejected it. I'd also like to note once she did reject that argument, the government didn't dispute it on appeal. The panel didn't say that there was probable cause and the district judge rejected that argument for good reason. She explained that Mr. Andrade's statement, and this is on page 18 of the record, Mr. Andrade's statement is too vague to support a probable cause finding. She considered it in combination with the mother's statement and she said that while in combination it shows there is probable cause to believe that Rosas was involved in the crime, the same is not true of Mr. Munoz and here's why. At most, the evidence suggests that Mr. Munoz may have had information concerning the kidnapping since he was an associate of Rosas, but not that he was involved. What Mr. Andrade said was this. I went to a bar one night. Mr. Rosas and Mr. Munoz were there. Mr. Rosas asked me if I wanted to do an unspecified job involving Beto or Bob and he said no and that was the end of it. There's no other evidence as to Mr. Munoz from any other witness statements. The mother does say Mr. Rosas was the person who kidnapped me and therefore the judge said if you put together that statement with Andrade, there's probable cause for Rosas, but there isn't for Mr. Munoz. None of the other witnesses implicated him. Her finding, we submit, is proper under the law. That evidence put together doesn't make it fairly probable that Mr. Munoz was involved and the government indeed didn't dispute this on appeal and the panel didn't find to the contrary either. We would submit that the district judge properly found that there was no probable cause as to Munoz. If I go back to the Supreme Court statement that the magistrate judge could properly exclude contradictory testimony but could properly include explanatory testimony, help me understand how if the evidence of torture is not connected to the recantation, how is the torture evidence explanatory? It explains that the initial allegations, although on their face seemingly generating probable cause, are in fact incompetent because they were gotten by torture. But in your view that's explanatory and not contradicting the original allegations? That is our view and in candor, Your Honors, I think both parties have tried to shoehorn their arguments into this explanatory contradictory framework. But the fact of the matter is this framework is far from perfect and has confused many judges in many courts. This court doesn't have to resolve that confusion here. The question here is resolved by going back to first principles. The job of an extradition judge is to decide if there is competent evidence. Evidence gotten by torture is not competent. So whereas here we have evidence of torture, it has to at least be considered. Not believed on its face but considered. And this is a job... But we're talking about your alleging an error in exclusion of evidence. And if we're going back to first principles, the Supreme Court said very clearly mere errors in the rejection of evidence are not subject to review by writ of habeas corpus. That was in Charlton. So if we're looking at first principles, the... We can't even consider whether there was an error. And when the court said that in Charlton, Your Honor, it was talking about evidence of innocence that was excluded. Mr. Charlton said, don't extradite me. I'm not guilty of the charge. I was insane when the crime occurred. That's a defense. You can't extradite me. The court said, no, the extradition hearing is not a place to suss out whether you're guilty or innocent. We're just considering probable cause. Has the Supreme Court ever said we could consider errors in exclusion of evidence? In Collins, Your Honor, the court said... They looked at what the evidence was, but I don't, I didn't see anything contradicting their statement that errors in the rejection of evidence could be reviewed. The court said that Mr. Collins had properly been allowed to testify to elements of probable cause. Now, if there is not a case... Did they say a magistrate judge had erred in excluding and we could review it? Explicitly, no, Your Honor. And if there isn't a case saying you must consider evidence of torture, I think that's understandable under the circumstances. What we're asking the court to do here today is to make explicit what has always been implicit in the law. When there is evidence of torture on which the extradition depends, that evidence has to at least be considered. No court has said up till the panel that such evidence can just be excluded from the calculus and not considered at all. That's why we don't have cases saying that that's error because it's never happened before. This is the first time it's happened and that needs correction. And I think that's why I petitioned for rehearing en banc, Your Honors. Counsel, let's suppose that we concluded that the evidence of torture ought to be considered. Do we send it back to the habeas court? Does the habeas court, can the habeas court send it back to the extradition court? What's the mechanism and who's going to consider this? It would be the extradition court, Your Honor. I think technically what we're asking for is for this court to reverse the judgment below and vacate the extradition certification. But because there's no race to decode a bar on extradition proceedings, they can simply reinstate the proceedings in the magistrate court. We're on habeas. Is that correct? That's right. Do we have to issue the writ or instruct the district court to issue the writ or do we send it back to the district court for consideration as to whether the writ should issue? And if the writ issues, then what? We free the accused or we free him conditioned on the extradition court reconsidering it? This actually was a question before the district court that she considered. Like, do I have the power to tell the magistrate to do anything in this case? And she concluded that she did under her power under the habeas writ. So yes, we would ask this court to order that the writ issue, that the present certification be vacated, and that it be returned to the magistrate court to consider the evidence of torture. And there the parties will make their arguments as to whether the evidence is compelling or not, sufficient or not, adequate, competent or not. And it will be up to the judge to decide what to do. And this is, again, something... I'm wondering whether you wouldn't conditionally vacate the writ. I'm sorry? I'm wondering if you wouldn't procedurally, I know this is very technical, but if we were, assuming we were to grant the writ, we could conditionally vacate the extradition certification  That's certainly proper, Your Honor. As to the technical aspects, I'll defer to the court. But at the bottom line, I think it's clear what we're asking for. We're asking for consideration of this evidence, which has never happened. But could we do... Is it in the record? I mean, could we review it? Do we need to send it back? I'm unaware of this court ever finding facts in the first instance, especially when the question is probable cause, especially here where the record hasn't been developed fully. But has... I guess that's my question. Has the record been developed fully? Not entirely. What happened was this. Several declarations were proffered, along with Mr. Munoz's petition. And then later, we moved for an extradition hearing, and we proposed calling some witnesses who would add additional evidence. And of course, we never got there because the judge said, I'm not considering any of this. Now, we're not saying that this court has to order the production of witnesses. We're going to leave that to the discretion of the magistrate to determine in the first instance. But once the record is complete, and once there is a reasoned consideration of the torture evidence, then the magistrate will be in a position to make that determination. Well, let's look at it as a practical matter. You're back in front of the magistrate. You have existing affidavits on the record, correct? Yes. You would like more evidence? We would like... Possibly a hearing. But if the magistrate were to say, look, you had your shot. I will now consider the affidavits you put forward or declarations. But I'm not going to have a hearing. I'm not going to open this up to a trial-type proceeding. Would that be an error? We would argue that he should have more expensive... Would that be an error? No, Your Honor. No. Because it is committed to his discretion. So the problem here... So the difficulty with shoehorning this into the little boxes that we've been given so far is the concern that you don't want to turn extradition proceedings into a mini-trial. On the charge. On the charge. But of course, you could have a mini-trial on torture. And I would expect that that, too, is not anticipated. So I take it your position is that the district court could look at the evidence offered by Mexico already, including medical and prosecutorial evidence, and the affidavits, and make a determination whether there's anything more. And if the district court said it's not enough, I'm just going to go back now to the facts,  Yes, Your Honor. The last thing I'll say, because I do want to reserve time for rebuttal, is this. This is... There's no mini-trial. There's no boogeyman lurking here. This happened in Barapin, Cornejo, Magnero, and out-of-circuit cases. This happens all the time. It's exactly the kind of determination magistrates make every day as to whether there's competent evidence of probable cause. Thank you, counsel. We'll hear from the government. Good morning, Your Honors, and may it please the Court. Mark Yohalem on behalf of the United States. I want to start by saying this is not something... The remedy that my opponent is asking for is not something that happens every day in extradition proceedings, and it is exactly what this Court and the Supreme Court have said over and over again.  Cannot happen in extradition hearings. So specifically now... Did we err in Barapin then? Because that's exactly what we approved in Barapin, was the magistrate judge evaluating whether or not the evidence was procured by torture. Well, let me say there are two things going on in Barapin. So it is true that the Court didn't disapprove of what the magistrate did in Barapin. But Barapin was not a government appeal. Barapin was the fugitive's appeal of the denial of his petition for habeas corpus. There is no means of the government to appeal the denial of an extradition writ. So it came up on the defense. And what this Court said was that the Court made a careful analysis of certain of the claims of torture. But then the Court also talked about other claims that statements inculpating Barapin were coerced. Those were recantations just like this. No, I'm not talking about the recantation. I'm talking about the allegations of torture, the evidence of torture that was evaluated by the magistrate judge in Barapin, and as to which we said the extradition court conducted a careful incident-by-incident analysis to whether there was impropriety, that is to say torture, which has been alleged in the previous sentence on the part of the Indian government. It's finding that the evidence regarding those ... claims was not the product of fabrication or torture, were not clearly erroneous. That sounds as though we said that's exactly what's supposed to happen. No, I disagree. But again, first, let me say, I disagree that what the Court said was that what the magistrate did in Barapin was compulsory. But second, and more importantly, I want to be absolutely clear on what the magistrate did in Barapin because it is critical here. In Barapin, there were a variety of forms of allegations of torture. One of those forms was that witnesses against the fugitive said that their accusations against him had been procured by torture and that they withdrew those accusations against them. Those were the recantations, just like the recantations from Hurtado and Rosas here, in exactly the same circumstances. And what this Court held in Barapin is that a magistrate court may not weigh conflicting evidence or determine who was telling the truth. And what the magistrate court said in Barapin is that it could not decide whether the original statement made was true or whether the recantation ... That was after Barapin had already affirmed the magistrate judge's finding that these original confessions were not procured by torture. Not so, Your Honor. That's exactly right, because he lists them by name, by number. That is correct. And as to those numbers, we said the magistrate judge found and was not clearly erroneous in finding that they were not procured by torture. And once that's admissible evidence, well, of course, it follows as it followed in Barapin. Then we got a confession and a recantation, and the Court said, well, we can't decide between those two things, but that's because it was already decided that it had not been procured by torture. Respectfully, not so, Your Honor. And it's not so for two reasons. One is that there were multiple discreet allegations of torture with respect to the ones that were based on recantation claims. Like the claims here, the magistrate court in Barapin said it would not consider those allegations because it could not make a credibility determination. That was a matter for the Indian courts to do. But second, and I think critically important and a critical difference between Barapin and in this case, is that in Barapin, India, though it nominally disputed the allegations of torture, as the magistrate court and the panel decision and the Ambon court all made clear, it neither attempted to refute them with any evidence of its own nor seriously objected to them. On appeal, the government didn't argue that there was no torture. And so Barapin is a completely different scenario where what the magistrate court was doing was not weighing two conflicting stories. When that happened with respect to the recantation evidence, the Barapin magistrate said, I can't do that. That is inappropriate. That's conflicting evidence. The only place where the Barapin magistrate court considered claims of torture was when there was no evidence on the other side. Here, what my opponent is asking for is something entirely different. And that's clear from his most recent letter to the court. What he is asking is for the magistrate court to say, I believe Hurtado and Rosas over the medical examiners who said that there were no injuries. I believe Hurtado and Rosas. I didn't say that. He said, as I understood him, serve it up and let the decision be made. He said, if you don't even serve it up, the decision can't be made. That's how I understood it. So I think you're misstating his position. I don't think I am, Your Honor. It is clear, first of all, if you look at ER 59 to 64, the magistrate court carefully assessed all of the allegations of torture raised by the fugitive here. And what the magistrate court said is, just as with respect to the conflicting claims of torture in Barapin, these are issues that have to be decided by the courts of the requesting country, because they would rely on determining which of these two accounts is more credible. And here, there is can Counsel, that section beginning on ER 59 is entitled recantation evidence. Correct. And I don't believe that that's Mr. Munoz's position. He's not asking the court to consider the recantation evidence. He's asking you to disqualify his initial confession, even if the confession is true in all of its respects, because it was obtained unlawfully. Well, respectfully, the heading of that section is the recantation evidence, because the primary evidence claiming torture of Hurtado and Rosas came from Hurtado and Rosas's recantation. But sure, there are at the same time that they said I was tortured, they said I didn't do it. But I'm asking you to do something slightly different. Let's suppose that they didn't deny the initial the initial statement, but said it was obtained through coercive measures unlawful under the due process clause. Right. And if that's the case, then the evidence would be would not be competent evidence, and we would have to throw it out, which is what Judge Morrow did. She said, OK, look, the problem is that if we throw out just Hurtado and Rosas's statements, there isn't enough evidence remaining to support the claims against Munoz. OK, so there are several steps to Your Honor's question, and I want to take each one in turn. First of all, you cannot isolate the claim of torture from the recantation for two reasons. So you say any time there's a recantation, you don't the judge doesn't have to look at the allegation of torture. No, I'm not saying that at this moment. What I'm saying is specifically here, Hurtado's original statement is I make this statement freely without any physical duress, without any violence, moral or physical against me. He makes that statement in the presence of a defense lawyer to a judicial officer called a public prosecutor in Mexico. He then says, no, no, no, I actually was tortured. That is not just a claim of torture. That is a recantation of the claim that he was not tortured. Yeah, your point is interesting, but it's a second order question because it goes to the question of what was his mental state at the time that he made the initial admission that he was involved in the crime. And what the second one does is you're right as to the question as to whether he gave it voluntarily. That is that is contradictory and not merely explanatory. But the overall question does seem to be explanatory. That is that his initial confession was not lawful. Did the government did the government of either Mexico or your office introduce any evidence that disputed whether or not the witnesses were tortured? Absolutely. Mexico proffered medical examinations that happened immediately after this torture purportedly took place, showing no injuries to Hurtado and Rosas. And was that evidence excluded also? It was not. I mean, it didn't factor into the probable cause determination. But see, that's the reason I the reason I kind of question why you think what your argument that recantations are inextricably intertwined, wherever that standard came from. It's I mean, if if if the torture question is a preliminary question before you get and you don't consider whether or not they're truly innocent or guilty, because that's not that's not on the table now, we're just determining whether there's confident evidence to support probable cause. What's the problem if both sides can submit evidence as to whether or not there was torture in having the extradition judge just determine which side is more credible? And it sounds to me like you have you have credible evidence on the other side. Sure. There's tremendous problems. So the first problem is that how is the magistrate for the first problem and most fundamental problem is that the Supreme Court and this court have said over and over again that the function of the magistrate court in an extradition proceeding is not to weigh conflicting evidence and find facts. As to the guilt or innocence of the crime charged. However, one of the things the magistrate judge must do is determine whether or not there is competent evidence supporting probable cause. And if the evidence was procured through torture, that that evidence is not competent evidence. Competency simply means in this context that the evidence has been authenticated consistently with the treaty and the statute. And that's something that this court. Is it your position, given your statement, that if the evidence of torture is undisputed, the government says, yeah, we tortured him, that it comes in any way? That case will never arise because the government would never. That's not my question. It's a hypothetical. Yeah. Well, so the answer is that if the evidence of torture is undisputed, then it is truly explanatory evidence. Then there is no conflict for the magistrate judge to weigh evidence and to find facts. When you say it's both, when it's explanatory and contradictory, you say contradictory supersedes explanatory. Absolutely. And that's because if you look at Supreme Court decisions for 150 years, it is absolutely clear in this court's decision for 150 years that the whole point of this extradition process is that Mexico or any requesting country is not required to send its witnesses and to send its evidence over here for it to be judged preliminarily in a court in the United States. And if you look at what would actually have to happen in... What that means, just I want to get the principle straight, is that in the United States, in an extradition hearing, when torture is alleged, the court need not consider evidence of torture to determine whether there's competent evidence. Is that the principle? Yes. Okay. The court, if the evidence of torture were not contradicted... My question was, without the qualifier you've put in there, and you said yes, that basically you don't need to consider evidence of torture. Correct, if that evidence is contradicted. And the reason why is because the extradition hearing is not the end of the line by any means. It's the start of the line. The end of the line, that first after extradition is certified, then it goes to the Secretary of State. The fugitive has an opportunity to seek relief from there, and the Supreme Court held in Collins that their great security rests not in constitutional limitations on the extradition process, but in a high sense of responsibility on the part of the executive officials charged with duties in this context. And then even after that... What is your support? I know what the treaty says about evidence, but when you say that competent evidence really only means authenticated, so all you need is a couple of stickers out of any foreign government, stamp, stamp, stamp, that's competent evidence? Yes. And that's from Pacific Livestock, Benson, Collins from the Supreme Court, yes, and from Berrapin, Desmond, Amami, Monta, Owen. Why is the fugitive ever permitted to introduce evidence? You're suggesting that the magistrate judge isn't supposed to do a factual weighing, but it seems to me by permitting the fugitive to omit evidence of any kind, that puts the question on the table. What the fugitive is allowed to do is introduce uncontested evidence that calls into question the inferences drawn from the evidence offered by... Where's your qualification of uncontested? I've never heard of anybody saying, okay, you can let in evidence if nobody disagrees with it. You submit evidence and after that you find out whether it's contested. So I'm not prepared to accept your qualifier, but let's go on to the main thrust. Isn't it the case that the magistrate judge is at some point going to be asked to say, well, does this really explain away the evidence that's been proffered by the foreign government or not? Yeah, but that can't be by weighing the two pieces of evidence together. Well, how else is he going to resolve that? Well, right. He cannot resolve it if the evidence conflicts. What he can do... But wait a minute. Explanatory evidence... I want to get the full principles. Only non-conflicting evidence can be considered. Yes. Only non-contradictory evidence can be considered. What then does the concept of obliterating evidence mean? If evidence cannot be introduced, then how can it be obliterating? Our case law says that obliterating evidence can overturn this. Can you give me an example of what obliterating evidence might be in this context? Sure. I mean, an example of obliterating evidence is in our answering brief at the panel stage. Is the railroad example. Exactly right. So in that case, there would be no weighing between conflicting evidence for the magistrate to do. The magistrate would say, I believe the truth of the evidence being offered by Mexico. I believe the truth of the evidence being offered by the fugitive. And there is a single story in which all of that evidence is true. In your hypothetical, is the government still pressing its case for extradition or does it say, oh my goodness, this is a good explanation, we withdraw the request, and hence the magistrate judge never has to rule? If the government doesn't withdraw, how do you not have a contest that the magistrate judge is asked to evaluate? Because what the magistrate judge is evaluating there is the strength of the inferences that can be drawn from evidence. And how is that not a factual determination? Because drawing inferences is different from a factual determination. If the government hasn't withdrawn the request, it sounds to me like a contested issue. And you're asking the magistrate judge to decide which he finds more persuasive. Yes, which inferences he finds more persuasive as opposed to which evidence he believes. And the reason why it can't be which evidence he believes is, let's just take a moment to What the magistrate court is going to be asked to do here is decide which is more believable. On the one hand, medical examinations from Mexico. On the other hand, claims of torture by the two co-defendants. And in the course of that, suppose the magistrate judge says, how in the world can I evaluate this? I need the people in front of me. And in fact, what the fugitive had asked for in this case was that visas be issued to bring his witnesses over from Mexico. So now Hurtado and Rosas, who are respectively serving 45 and 37 year sentences in Mexico, are sent over here so they can testify. The medical examiners are sent over here. The jailhouse people who supposedly carried out the beatings are sent over here. But counsel, what's the purpose of 3191 then? The requirement that the evidence be authenticated? 3191 is that an innocent fugitive can bring witnesses into an extradition hearing. Sure. He can bring in witnesses, but those witnesses can't be for the purpose of contradicting the evidence put on by the government. So as a practical matter, torture can never be considered in extradition proceedings because the evidence comes in from the government saying this is a statement he gave of his free will. And he said it was tortured. And under your theory, that would be contradicting the early statement. Fact-finding had to be made. So as a practical matter, torture can never be considered in these instances. Is that what your position is? No, that's not my position. So when can torture be considered? When it's uncontested, and which has happened. In Guild, the evidence of torture was uncontested. But the government, let's say the government doesn't contest the evidence of torture. The Mexican government comes in, here's the statement of confession. He says it was tortured. They say nothing. Then you have a case where if the claim of torture is not disputed, then there's no factual dispute that the magistrate would have to resolve. And that could potentially be explanatory evidence. But that's not this case. In this case, Mexico vehemently disputes it. The two defendants who say they were tortured, the same judge who heard their recantation evidence ordered them held over. That's in the record. They have been convicted. That's not in the record. But what's in the record is that the Mexican judge who heard their claims of torture held them over. And so- So what did you mean when you answered the question earlier and you said, the evidence of recantation disputes their earlier statement that their statements were made freely and voluntarily. So you have in my hypothetical a statement that says this statement is made freely and voluntarily, that's the only evidence that comes in from the Mexican government. And you have the fugitive statement that I was tortured. Did I misunderstand your prior answer that that would be conflicting evidence that the magistrate judge could not- Correct. So when do you ever get to torture? I mean, when do you get considered torture? Because you could have, for example- Because the statement will always say, generally, that I was made freely. That's not true. That statement wasn't made with respect to Rosas. And again, you're sort of presuming the level of specificity and process we see from Mexico, but- No, I'm just giving a hypothetical to understand your position. So you could have an, the Supreme Court has said you can have multiple layers of unsworn hearsay. So you could have something that says, the prosecutor from Mexico says he heard from a police officer that Rosas confessed. That would be competent evidence. The Supreme Court has held that that is competent evidence. And then the fugitive would come in and say, that's true, but here's a statement from Rosas saying he was tortured. Then Mexico's response could be like India's response and bear up end and say, we really have nothing to say on that point. Okay, there, there would not be an evidentiary dispute that the magistrate court would have to weigh evidence, make credibility determinations, and find facts. All things that has been said time and again by the Supreme Court and this court cannot be done in the extradition process. But in this case here, it's a totally different posture. What's happening here is Mexico vehemently disputes the claims of torture. The government's position isn't that the fugitive will never get to make his arguments about torture. He will get to make them. He will get to make them in a court in Mexico. And what this court and the Supreme Court have held repeatedly is that the premise of the extradition process is that Mexico's courts are trusted to resolve those issues. But why can't the magistrate judge do that here? I mean, what you just described, I mean, set aside the recantation, consider the allegation of torture. And in considering it, consider what the statements are that the government has offered, including that Mexico vehemently refutes it. Consider that the allegations of torture may be self-serving. See what else that the extradition court thinks reasonably it can consider in an extradition setting. And then let him decide. Because one of two things will happen. Either the court will say, given the state of the evidence right now, I'm going to side with the fugitive. In which case, Mexico would rightly say, we have to be allowed to send our witnesses over so that their credibility can be assessed. Or the court will say, I can't make a credibility determination here. In which case, I suppose my opponent's view would be that the hearing of witnesses would be required, because there has to be a credibility determination. Or the court will find for Mexico, in which case, no harm, no foul. But at least there is a significant risk that. I mean, just so that I understand that. So what you're saying is, Judge Murguia said, why can't the court do that? So if the court, the magistrate judge, had done that, either way, then your argument would be that it would have to turn into a mini-trial. Because then the request of either Mexico or the petitioner would have to be taken seriously to bring witnesses. Either we win, or we should say Mexico wins, or there has to be a mini-trial. But surely what cannot happen is that the magistrate says, I'm not going to hear Mexico's witnesses. And nevertheless, I'm going to find them to be not credible. There is no way that the magistrate could say, I'm going to discredit the medical examiners. I'm going to discredit the Mexican judge who heard this confession. I'm going to discredit the Mexican prosecutor who said there was no torture. Based on these written statements. Let me give you a different scenario. We've got the evidence that we have here. The district court says at page 20 that the documents on the torture were properly excluded. If we were to just put this back where it potentially should be, which is at least the documents would be considered. Wouldn't it be possible here for the magistrate judge to say, okay, I now have everything in front of me. I am going to consider everything. But my decision is, at best everything is in equipoise because I would have to make credibility. We don't have documents of certain nature. And therefore, torture is not sufficiently proven here given an equipoise situation. And I'm back to extradition. But the magistrate judge would have considered what is the evidence. The magistrate judge did consider the evidence. But the district court said it was properly excluded. It was excluded because the magistrate court said that it could not resolve the conflicting evidence without making a credibility determination. And because of that, this was contradictory evidence that had to be excluded. But it's not that the magistrate court, and I want to be clear because my opponent has depicted the magistrate court as some kind of, you know, a monkey covering his ears and eyes and not considering things. This magistrate judge provided the fugitive with an incredible array of process. That's why this has taken so long. And one of the things that the magistrate court did was carefully review all of this evidence. But what the magistrate said is that when you have on the one hand the statements that there was no torture and the medical evidence on that side and the prosecutor's statement from Mexico on that side. And on the other side, you have these recantations and the additional evidence that. I think I forgot all that. And I want to follow up on Judge McEwen's question. I see two different kinds of evidence that may be at issue here. One kind of evidence is evidence of guilt. And if there's a conflict in the evidence, the extraditing judge has to say there's a conflict, I can't decide it, I extradite. That's evidence of guilt. There's also evidence going to the admissibility of evidence. And I think everyone agrees that evidence of guilt, if there's conflict, we extradite. There seems to be disagreement here as to what you do with evidence of admissibility of evidence. You seem to be arguing that the magistrate judge is incapable of deciding even the question of admissibility of evidence if there's conflict over whether or not it's admissible. Is that right? Well, the evidence is admissible. No, I asked a yes or no question. Is that right? Yes. So the magistrate judge does not get to decide whether the evidence is admissible. No, the magistrate judge has to decide that it's authenticated, at which point it is admissible. But what they're going to. An authentication for you is very narrow. It does not include whether or not there's been torture. Correct. And the reason. I mean, that's your position. And the reason I want to make that clear is that this is not limited to claims of torture. It's never been limited to claims of torture by the fugitive. What the fugitive said is also claims of bribery, claims of forgery. I'm not interested in that. I'm only interested in the question as to whether or not the magistrate judge can consider whether there has been torture in determining whether the evidence is admissible. And you say if there's evidence that isn't conflict as to whether or not there's been a torture, the magistrate judge cannot consider that. And that's your position. Correct. The reason why is because that principle that your honor is setting forth would not be limitable to torture. The reason why is that to the extent there is a due process. No, I think I think it is admissible to torture because of the special characteristic of evidence obtained by torture. We started out with a proposition. I don't think you disagreed with it, that evidence obtained by torture is not admissible. Period. Correct. And evidence that is false is also inadmissible. No, that's not true. Evidence that's false may or may not be false. You have a unit and you decide whether it's evidence that is proven to be false. This court is held violates the due process. The government cannot introduce knowingly introduced false evidence without violating due process. But if evidence what's the difference between I hereby swear I did this voluntarily. That may be true or false, and I was tortured, so this was not actually true when I said it. So how do you distinguish between that truth and falsity? Right. I mean, the answer is that a magistrate judge should not be weighing competing evidence and resolving disputed facts. That is to be done in the country where the evidence and the facts and the witnesses in the crime all are. And there's no reason why, as defendants' own papers throughout this case make clear, why this would be any different than saying the witnesses against me were bribed and I want to introduce evidence that they were bribed. That doesn't go to the facts of my offense.  Counsel, I have a question on that. If I have evidence, I'm in the defendant's shoes, that the witness is paranoid schizophrenic and has a history of making up stories about people he doesn't like or reads about in the newspaper. In this context, he could not, in your view, he could not introduce evidence as to that. He can introduce evidence for that if it's not conflicted. But if Mexico says this witness is sane and he was examined by a medical examiner and he was of clear mind when he gave this testimony, then the magistrate judge can't hear competing medical evidence to decide whether the witness was or was not mentally ill. Let me ask you, I know we're almost out of time, but in the search warrant context, magistrates weigh credibility all the time. That's what we require under Franks, that they actually make that test. Yes, the snitch said this, but he's been convicted twice of drug offenses. Are you saying that magistrates are incapable of weighing this or that there's some rule or statute that says they cannot? They're obviously not incapable from a physical ability sense. It's that they are prohibited by the rules of undergirding extradition law from weighing competing evidence. And the reason why is that as the Supreme Court and this court have held, to require the requesting country to send its witnesses and evidence to be evaluated in American courts would defeat the point of the extradition treaty. And in my last few moments, I just want to note how extraordinary what the fugitive is asking for here. I am aware of no case, and the fugitive has cited no case, where a piece of evidence offered by a requesting country has been held to be not competent. Any, I'm unaware of any case, and the fugitive has cited no case, where a certification of extradition has been overturned because evidence was excluded. He's cited none. The Supreme Court has said that that relief is unavailable. I'm aware of no case, and the fugitive has cited none, where any court has said that a magistrate court in an extradition process is required to hear testimony and evaluate credibility. To the contrary, every court, including this court in Barapin, has said that a magistrate court does not evaluate credibility and does not decide between conflicting facts. I realize that that seems like a harsh rule. It is a harsh rule only because, as the Supreme Court has said, a finding of extradition signals the start, rather than the conclusion of the litigation of the fugitive's guilt. The premise of this entire system rests upon the faith that Mexico is capable of adjudicating these claims. This court can't throw that faith away. The Supreme Court and this court have said that the rule of non-inquiry requires that you credit Mexico's ability to make these determinations, and this case has amply shown that Mexico is able to run its legal system. The defendant brought an amparo to have the murder charge dismissed, and it was successful. Co-defendant Becerril appealed her conviction, and she had it overturned on appeal. Mexico can adjudicate these claims where the witnesses are, where the crime took place, and it can do so better than a magistrate court, and that is why our system of extradition has entrusted those responsibilities to the requesting country and not the magistrate court in this country. Thank you, Your Honors. Your Honors, this is not a question for Mexican court. Article III of the treaty specifically requires a U.S. court applying U.S. law to determine if there is competent evidence to support the extradition. This is not a question we can punt to Mexico. But the specific language is sufficient. Which, yes. And it seems to me, hearing your opposing counsel, he's arguing that sufficiency in this context means authentication only. Authentication only. Right, which is not at all the case, Your Honor. The example was given, I believe, by Judge McHugh, and I don't want to misspeak. If you just put the ribbon on, then it comes in and it has to be credited. That's not the requirement. The statute that he's referring to, 3190, talks about admissibility of evidence, not the competence of it. We can't read a statute to conflict with the Constitution. If we read 3190 to say, all you have to do is slap a ribbon on and the evidence comes in, then we're in conflict with the Constitution and the treaty, which requires... You know, our extradition treaty with Mexico really mirrors many of our extradition treaties. Do you have any cases in any... And it mirrors other extradition treaties under international law. Do you have any cases where the issue of torture has been a threshold issue, where the extradition has been refused? It was in Barrapin. There were multiple count... I know we've been through Barrapin. Yes, we have. And different people have different views of Barrapin. Yes, there were... Others? Besides... Yes, it was a threshold issue in Mañero. And the court said in Mañero, this court said that both the magistrate and the district judge meticulously reviewed the evidence and decided it was not persuasive. And that finding... Evidence of torture? Evidence of torture, Your Honor, precisely. This... The government... I think as the court's questions make clear, the government's position that evidence can never be disputed turns the probable cause inquiry into a foregone conclusion and reduces the magistrate from an impartial decision-maker to the government's rubber stamp. Well, let me ask you... Let me ask you this. If... Let's say if the magistrate had determined that... Did... Looked at all of those and said, I'm making a factual determination that these were tortured, that there was torture, therefore, that there's no basis. Is... What recourse does Mexico have? Mexico can try again. There's no race judicata bar to these proceedings. If it has untainted evidence, it can proffer it. But the problem is that's not this case. This case is that all the evidence is tainted. We have a substantial body of evidence that the accusation... But wouldn't it be law of the case that the magistrate believed these witnesses as opposed to the other witnesses? Would it be law of the case? Yeah. Going forward, I suppose the parties can make that argument, Your Honor. But at the end of the day... But I guess what is the danger of that American courts would be making total... Would adjudicate things on the merits and then that's the end of it? There's no danger that an American court is going to adjudicate the merits of the kidnapping charge. And frankly, I'm actually surprised... Well, it seemed to be if an American court said that I believe these were taken by torture and therefore, you know, weren't that... And that's why I'm not extraditing, then that could be... There would be no recourse then. That would be law of the case, Your Honor. Yes, if the court were to find considering the evidence of torture... But you would agree that American courts aren't supposed to do that. That is precisely what we're saying. They must decide. They must decide if there is competent evidence to support the extradition. Evidence gotten by torture is incompetent. But if they said I... But if the court said, I think that there was torture and I'm not extraditing, then they've essentially ruled on the defense. They've said there was a defense of torture. That's the end of the case. And Mexico could never prosecute them. Your Honor, torture is not a defense to kidnapping. Torture goes to the competence and admissibility of the allegation. It wouldn't be a finding as to whether they're guilty of the kidnapping charge. It would be a finding simply that the evidence that Mexico is offering to justify this extradition is not competent in a U.S. court. And that is precisely the determination that the treaty requires a U.S. judge to make and that U.S. judges make every day in search warrant situations, when IJs are considering cat claims of torture, when any judge is considering a question of probable cause. This is not some wild, radical idea we're proposing. In fact, it's the government's position that is quite radical indeed. The government's position is that when there is evidence of torture, it can never be considered unless, of course, it's undisputed. And that's a fantasy world. When are we going to have an extradition case where the government comes in and says, we want to extradite this guy. There's evidence he was tortured into making the confession, but we're not disputing the torture. Extradite him anyway. That's a fantasy world. Torture was disputed in Barrapin. Torture was disputed in Manero. Torture was disputed in Cornejo. And all the other cases out of circuit that we cite in our briefs, the judges in all of those cases considered the torture evidence and made a reasoned determination as to whether the evidence of torture was sufficient or not. And that is all we are asking for here, Your Honors. Thank you, counsel. The case is heard. We'll be submitted for decision, and we'll be in recess.
judges: Thomas, McKeown, Wardlaw, W. Fletcher, Clifton, Bybee, Callahan, M. Smith, Ikuta, Murguia, Owens